### CORN EXCHANGE OF BUFFALO et al. v. PATTERSON.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

No. 14.

1. MONOPOLIES ⊕⊃28—CIVIL LIABILITY—RIGHT OF ACTION.

At common law, an action could be maintained on an agreement in restraint of trade by one whom it was maliciously intended to injure, though such an agreement would not be enforced; but, to maintain the action, plaintiff must prove, not only the agreement, but that such agreement was maliciously made to injure him.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⊕⊃28.]

2. CONSPIRACY ⊕⊃19—CIVIL LIABILITY—EVIDENCE—MALICIOUS INTENT.

The action by the grain committee of a corn exchange in notifying members that plaintiff had failed to pay for corn purchased from one of the members, even if the decision of the committee that he was liable for the corn was incorrect, did not alone establish a malicious conspiracy to injure plaintiff; especially where it was shown that only two members of the exchange had refused to deal with plaintiff, and they had based their refusal on knowledge of their officers, or information from the dealer having the claim against plaintiff.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 25, 26; Dec. Dig. ⊕⊃19.]

In Error to the District Court of the United States for the Western District of New York.

Action by Richard S. Patterson against the Corn Exchange of Buffalo and others. Judgment for the plaintiff against some of the defendants, and those defendants bring error. Reversed.

See, also, 197 Fed. 686.

⊕⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y., for plaintiffs in error.

Rush Trescott and Edmund G. Butler, both of Wilkes-Barre, Pa., and Harris S. Williams, of Buffalo, N. Y., for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The plaintiff brought this action to recover $50,000 actual and $100,000 punitive damages against the Corn Exchange of Buffalo and 55 other persons, mostly associate members of the Exchange. The cause of action alleged was a conspiracy at common law, to wit, that on or about August 1, 1907, the defendants had maliciously combined to injure and destroy the plaintiff's business and his good name and reputation by passing a resolution in the Exchange prohibiting members from dealing with him, and in furtherance thereof on or about October 7th, did post, blacklist, and boycott him on the Exchange and refused to sell him grain for the purpose of compelling him to pay an unjust demand of Burns Bros., a member of said Exchange.

It appears that April 26, 1907, the plaintiff, doing business at Wilkes-Barre, Pa., ordered of Burns Bros. of Buffalo, and they agreed to ship to him, three cars of No. 3 yellow corn, "official weight and inspection certificate final." Three cars certified to be No. 3 yellow corn were so shipped from Buffalo; but, on arrival at Wilkes-Barre nine days later, the grain in one of the cars was found to be in bad condition, and we assume was not then of the grade of No. 3 yellow corn.

July 27th, the plaintiff having refused to pay for this car, Burns Bros. made a complaint against him to the Corn Exchange.

August 15th, the grain committee having previously notified the plaintiff that they would take up the case on that day, when he would be given an opportunity to be heard, having been informed that Burns Bros. had brought suit against him, determined to proceed no further and referred the matter to the board of directors.

September 26th, the board of directors recommitted the subject to the grain committee "for such decision as to them would seem just and proper under the rules of the Corn Exchange."

October 2d, without holding that the grain in question was No. 3 yellow corn on arrival at Wilkes-Barre, the committee decided that the Buffalo certificate of inspection was final and all that Burns Bros. had agreed to give. They stated, moreover, that it was evidence confirmatory of the correctness of·the certificate that this was the only car out of thirteen graded at the same time out of the same elevator, cargo, and bin, about which any complaint had been made. The committee made an award in favor of Burns Bros. against the plaintiff of $200.52 with $20 expenses, the fact of which award was circularized by the secretary of the exchange to the members.

The committee did not recommend to the board under rule 3, § 1, that transactions with the plaintiff by members should be prohibited until he had settled the claim, nor did the board ever pass such a resolution. The rule reads:

"Sec. 1. Any corporation, joint-stock company, firm or individual, not a member of the Corn Exchange·of Buffalo, who shall be accused of any pro-

ceeding inconsistent with just and equitable principles of trade, or a violation of any commercial usage established by the Corn Exchange shall, on complaint, be summoned before the grain committee and given an opportunity to be heard. Should the above committee be unable to induce a settlement, if a proper case and the circumstances seem to warrant, it shall report to the board of directors, recommending that the transaction of business with such defendant by any member of the Corn Exchange, be prohibited until a settlement be made; and any member of the Corn Exchange who shall represent or transact business with, for or on behalf of said defendant, after notice of such prohibition shall have been posted on the bulletin five days, shall be guilty of willful violation of these rules and subject to the penalties of rule 4, § 2."

The court correctly held that this rule was lawful, but submitted to the jury the question whether it had been perverted to an unlawful use by the grain committee and by such of the defendants as acted upon the notice of the award for the purpose of compelling the plaintiff to pay it.

The complaint was dismissed as to all the defendants except ten, and against them the jury rendered a verdict of $2,000, to the judgment entered upon which this writ of error was taken.

[1] Decisions in cases arising under statutes are not applicable. Although at common law courts would not enforce an agreement in restraint of trade or against public policy, an action could be maintained upon it by one whom it was maliciously intended to injure. Mogul v. MacGregor, L. H. 21, Q. B. 552, L. R. (1892) App. Cas. 25. See, also, our decision in National Fireproofing Co. v. Mason Builders' Ass'n, 169 Fed. 259, 94 C. C. A. 535, 26 L. R. A. (N. S.) 148.

[2] In order to recover, the plaintiff had to prove first an agreement between the defendants or between some of them, not to sell to the plaintiff, and, second, that such agreement was made maliciously for the purpose of injuring him. We discover no evidence whatever of a conspiracy between any of the defendants, much less of a malicious conspiracy to injure the plaintiff. The Corn Exchange, defendant, took no part except as it might be held liable for the action of the grain committee. The action of that committee was right, in view of the facts laid before it as well as of the facts as developed at the trial. However, if their decision was wrong in law or in fact, or in both, there was no evidence that it was the result of a corrupt or malicious conspiracy. On the other hand, there was proof that several of the defendants filled every order that the plaintiff gave them and only two were shown to have refused to deal with him, that is, Husted Milling Company, one of whose officers had been on the grain committee that made the award, and Whitney & Gibson, who acted upon information given them by one of the Burns Bros. that the plaintiff was not a reliable person. There was no direct evidence of any combination between these defendants and anybody else nor any evidence from which such a conspiracy could be inferred. Their action was obviously independent and individual. A number of other questions have been discussed by counsel which we need not consider, because we think a verdict should have been directed for the defendants.

The judgment is reversed.